Good morning, Your Honors. Ronald Berruti of the firm Wiener Lesniak on behalf of the defendants, Officer Francis Skagman and the Township of Woodbridge, I respectfully request that Your Honors allow me two minutes on rebuttal. Thank you, and may it please the Court. Your Honor, before this Court is a pure issue of law. There are key facts that are not in dispute, and those key facts support... Before you start talking about the key facts, I wanted to ask about a truly pure question of law. You're representing the Township as well, right? That's correct, Your Honor. If it is so that the municipalities are not entitled to qualified immunity as a matter of law, then don't we lack jurisdiction over the denial of summary judgment with respect to Woodbridge? I believe, Your Honor, if this Court finds that there was qualified immunity for Officer Skagman, I believe that pursuant dependent jurisdiction, I think this Court can take that issue up. If there's qualified immunity, there is no basis to pursue the claim against Woodbridge. At the worst, I would respectfully suggest that if there's qualified immunity, this Court should direct the lower court to reconsider the issue of Woodbridge's potential liability. If the only basis on which this case is here is Officer Skagman's qualified immunity claim, and it's conceded as it has to be that Woodbridge doesn't have a basis to say it itself gets qualified immunity, so all we're dealing with is an interlocutory ruling denying summary judgment. I'm not sure how you get pendant appellatures. I'm just not getting it. I don't mean to be obtuse, but do you want to take another run at it? My run at it is as follows. I believe that it would be exalting form over substance to deny Woodbridge the opportunity to have its claim heard under this situation. All right. Thank you. The key facts before this Court that are undisputed are as follows. It's admitted that Officer Gagnon was dispatched to the scene. It's also admitted that when Mr. Gagnon, or it's acknowledged that Mr. Officer Gagnon, excuse me, knew DHS Officer Sexton to be a police officer for the Department of Human Services. It's also undisputed that Officer Sexton advised Officer Gagnon that Ms. Ciardello was under arrest and that he needed the handcuffs to... But it is disputed for what? Whether he told him whether it was for obstruction? That is disputed, but my position, Your Honors, is that the very fact that Officer Sexton told Officer Gagnon that an arrest had occurred is satisfactory for qualified immunity under the Rogers case. And the reason being, I'll go to Rogers. In Rogers, there were four police officers who were in question. There was Edwards, Eiler, Stein, and Powell. Edwards had been told by a probation officer that there was an arrest warrant. Based upon that, he advised Eiler there's an arrest warrant. Eiler and Edwards then arrest Rogers. Well, an arrest warrant is pretty strong, is it not? An arrest warrant is strong. An arrest warrant means someone has made a determination. It's... That someone should be arrested. Right. It's a rumor that there is a determination that someone should be arrested. That's what Edwards said. In this case... It may be a rumor, but it's a rumor communicated by one police officer to another, which means a neutral, detached magistrate has made a determination of probable cause. Those are two different communications, aren't they? Even under arrest for obstruction. Well, here, though, the officer has said there's actually an arrest, which means that the officer has determined, the arresting officer has determined, that there was probable cause. And the law permits the... Not necessarily. I mean, when someone says you're under arrest, anytime a police officer says we're under arrest, does that communicate automatically that there's probable cause? No, but to the officer arriving subsequently to the scene, that is enough for the officer to rely upon the arresting officer. Where does Powell say that? Yeah, under what case? Powell doesn't say that. Well, I believe under Powell because with Stein and with Stein and Powell, they showed up at the county line, and they were just told there was an arrest warrant. That's not even... I guess it's really sort of the same, I'd argue, because if the arrest warrant is an indication that there's probable cause, the actual fact of an arrest is also an indication that another officer determined there was cause to arrest. Is there a difference between a neutral, detached magistrate making a determination of probable cause and an officer saying, I got him? I think in this case, I think that Officer Gagnon is within his rights to rely upon that for purposes of qualified immunity. And let me just take an example, and we have to look at the, first of all, the concept of qualified immunity. Is there a clear violation of established law? No. Is there clearly an unreasonable conduct by Officer Gagnon at the time? I don't think so. Is he plainly incompetent by doing what he did? You're making these judgments. It's not so clear. Okay. Let me take an example of, a real-life example. If a DEA agent stops somebody, and he doesn't have cuffs, and he arrests the person, and a local officer comes to the scene, and he knows this person to be a DEA agent, does the local officer have to start inquiring as to the basis for arrest? Or is the local officer entitled to determine that based upon what he sees at the scene and the announcement of an arrest, that it's appropriate to hand over the cuffs? And I respectfully suggest that under the, because of the dangerous nature of police work, that that has to be permitted. Well, there has to be an objectively reasonable basis to believe that there was probable, that Gagnon had to have an objectively reasonable belief that there was probable cause for the arrest. You're saying that you get that because another officer on the scene says the person is under arrest. That's correct. But I don't find that presumption to be present in either the case law or the facts. I mean, it'd be one thing if there was evidence, you know, maybe there is, I didn't see it, that, you know, she's flailing about, and she's kicking, and, you know, and she's screaming, and trying to pull at his hair, or get his gun, or doing something so that, you know, maybe the officer coming on the scene has a basis. And maybe that's the case in a lot of situations where the conduct of the individual would give rise to the probable cause. But we don't have that here. And you're asking there to be a presumption of probable cause by virtue of a police stop, which amounts to an arrest. That just doesn't, tell me where in the case law that exists. It's an announcement of an arrest. It's not just a stop. He announced undisputedly that she was under arrest. And I believe that it's similar to Rogers where an officer says there's an arrest warrant. It's an independent basis upon which the officer arriving at the scene can rely upon. Well, is it significant? Judge Jordan, in the hypothetical he raised, talked about the fact that a magistrate has ruled on it, or some other judicial officer has ruled and deemed that there's a probable cause for an arrest warrant. Here, you want us to say any time a police officer comes on the scene and another police officer says this person's under arrest, that that means that they're fine and they can go off and do what they need to do. And Rogers doesn't say that. And I challenge you to point us, please, to where Rogers says that so that we can apply what you're suggesting here. Well, if that's the case, Your Honor, then I guess I'm in trouble because I believe that Rogers says it, but just with a different set of circumstances. I believe that the holding of Rogers is that the announcement that there is an arrest warrant, even though it was a flawed announcement, it was based upon, it was not true, but those officers who were told there was an arrest warrant were cloaked with qualified immunity because they relied upon that. Because there was an objectively reasonable basis for them to believe there was probable cause. Because a neutral magistrate had found there was by issuing an arrest warrant. You really need to get back to the test. And the other fact you have here is if the facts do end up being she's under arrest, then when Gagnon takes her in and books her for obstruction, you have an additional problem there because what is the probable cause for the obstruction charge? Officer Sexton filled out the charge. It was not Officer Gagnon who did that. Officer Gagnon completed the name, address portion. Officer Sexton charged. After going home and pausing these groceries, he went to the jail and put in the obstruction. Okay. Isn't your best argument not that the words she's under arrest are what make the difference here, but that arriving on the scene and seeing somebody in a physical restraint pushed up against a car in an arm lock provides a basis, along with the statement she's under arrest, along with the call saying there's an officer there with an animal control problem that would allow somebody to say, well, I may have just missed the flailing, as Judge Rendell put it, but I'm here immediately after the flailing and it's okay for me to say, okay, there was some resisting going on here. That's why she's up against the car. I mean, doesn't your pitch have to rely on what he sees when he gets there, not just on the words uttered she's under arrest? I don't believe they're mutually exclusive. I think they're all part of the same package. And we also – there was the announcement of under arrest. There was a crowd developed. There was no one indicating there was anything wrong with what happened. And the woman was restrained. And I think under that whole totality of circumstances, the important – really important to me, the most important part being the announcement of arrest in that context, I think provides the reasonable basis to believe there's probable cause. Take a step back. Before showing up, the dispatcher told Officer Gagnon or put out two facts, right? One was that it's a possible vehicle lockout. That was the first instance. And then the next one was there's a car containing an animal. Is that accurate? I believe the – I believe that there's a – it's either a lockout or an animal issue was the first. And then the – it's a disputed fact that there was a second call saying it was an assist officer. And that's – I acknowledge that's a disputed fact. I thought there were three. I thought Judge Green was right that there was the first one, it's a lockout. Second, it's an animal control issue. And then you get the disputed one, whether it was ever in that second call said officer assist. It may be three. My recollection is two. And there was a – I believe Officer Gagnon wasn't sure if it was a lockout or an animal distress issue. My only point in bringing that up is your mindset going to the scene, if it's either a vehicle lockout or an animal in distress, however you want to describe it. It's not I'm about to go arrest someone. But there is a disputed fact as to whether there was a second call saying that there was an officer in need of an assist. And I didn't bring that up for purposes of this argument because, frankly, I don't believe that is necessary to reach the qualified immunity question based upon the arguments. If I may just address Judge Rendell's issue with respect to the flailing. I respectfully suggest that the flailing, the part about qualified immunity and the part about my argument that I think makes some of the most sense is that we want to avoid flailing. We want to avoid putting the officer, the officers, the public in the area, and everyone else at risk. If there is a super investigation that is being sought, what is the basis for probable cause? What is the basis for the arrest? You now give an opportunity for this person to start flailing, potentially to start causing trouble. No. I mean, my question was just directed at what Judge Jordan was talking about, the context of the scene when the officer arrives and observes the crowd and draws on his observations and his experience as an officer and perceives something. That also can give rise to an objectively reasonable basis for probable cause. I'm not talking about policy of what we encourage. I'm just talking about his perception. I understand. I understand. So if I have the red light, so I think my time is up. Thank you very much. We'll hear from you in rebuttal. Thank you. Good morning, Your Honors. My name is Kathleen Goger, and I represent the appellees, Maura and Robert Sardello. Could you bring the microphone down a little bit, please, so we can hear you? Sure. Thank you. Well, I guess we're really where we need to be. Rogers teaches that unless an officer who relies solely on information supplied for him by another officer is not entitled to qualified immunity, unless there's an objectively reasonable basis from the information that he receives for him to believe that there was not probable cause. Or that he perceives, right? Or that he, I'm sorry. Or that he perceives. Yes. Would it have been enough if he had gotten there, Officer Gagnon, and he had seen your client doing the flailing, for lack of a better word, actively fighting against Officer Sexton? Would that have been enough for Officer Gagnon to say, okay, here are the cuffs? Well, I don't believe it would have. You know, obviously that's not the case here because he testified. It's not enough to see somebody actively struggling against a police officer in the context of your answering a call to help a police officer with something? It's not enough to see them restraining somebody? I mean, who's actively fighting them to say, ooh, there's a resisting arrest here. I can help restrain this person fighting the cop. If what he observes amounts to resisting arrest, then we're out of Rogers. We're talking about a situation where an officer observes someone he knows, he's a police officer, in the act of restraining someone who's resisting.  So that would make a difference. That's a different situation. That would make a difference, right? Well, we're not talking then about the Rogers situation. We're talking about a situation where the officer who arrives observes somebody resisting arrest. What is precisely the conduct of Gagnon that you're saying violates clearly established law? Okay. Is it the taking in? Is it the giving of the handcuffs? It's everything. It's the arrest? Because the arrest, if the arrest was signed by Sexton, the actual... It wasn't, Your Honor. The arrest report was signed by Gagnon. Okay. But it was filled out by Sexton, right? It wasn't filled out by Sexton. Gagnon testified that he filled out certain boxes on the arrest report, including obstruction, including the offense, and that the things that Sexton filled out when he arrived were Box 62, where he puts the complainant's name, Steve Sexton, Human Services Police Department, and Box, I believe it's 72, next of kin of Morris Sardello. Is it legally significant at that point? At that point, the question is, is there a basis to keep holding her, not is there a basis to arrest her, right? Well, Gagnon has provided the handcuffs, escorted Ms. Sardello to his patrol car, put her in the patrol car, driven her downtown, processed her, handcuffed her to the bench. So at the point we're talking about filling out the police report, it's not disputed, is it, that there's been further conversation? At that point, we're not talking about she's under arrest. That's the only officer communication that's gone on, right? It's a little difficult to say from Gagnon's testimony, but there is a recording of a telephone conversation between him and his superior, and the superior says, what is she charged with, and Gagnon says, it turned out to be obstruction. How he exactly got that information, I don't know, because there's also testimony. Well, he did talk to Sexton on the phone from home. He had conversations. And all that's undisputed, right? There were further communications with Sexton, pursuant to which Gagnon understood this is an obstruction of justice arrest. So the question of... That the charge was obstruction, yes, whether he knows what was going on, whether he knows what investigation the plaintiff allegedly interfered with that the obstruction charge was made, I don't know. I would point out, too, that the cruelty to animal charge is a disorderly person's offense. Obstruction, when the interference is with a disorderly person's offense, is also a disorderly person's offense. All this plaintiff was ever charged with was disorderly conduct, and there's a procedure in New Jersey I'm sure you're familiar with where all you have to do is issue a summons to someone for a disorderly person's offense. So you don't take someone into the station house for... No, there's no need to do that. Well, there may be no need, but does it violate... Well, I don't think, since it's a state regulation, I don't think it rises to the point of a constitutional violation, no, but I'm just pointing out what could have happened if the slightest inquiry had been made. What went on here? When you say the slightest inquiry, that takes us back to the scene, right? And you would agree, wouldn't you, that it's undisputed that there's at least a call saying go down there, there's some animal control issue. That much is undisputed, right? Well, I think that the district court laid out the undisputed facts. I'm just asking you. Oh, sure. Do you agree that's undisputed? Okay. And it's undisputed that this officer knows Sexton and knows he is a police officer, right? Yes, so he testified, right. Yeah. And it's undisputed that when he gets there, Sexton has your client in an arm lock physically pressed up against her car and says to Gagnon, at least, give me the cuffs, she's under arrest. Correct. I agree. Okay. So is the temporal difference, assume it's a one-second difference between seeing her arms moving and seeing her restrained and up against the car, is that of constitutional moment? I certainly think so. And, I mean, to go back to this flailing, I agree that if Gagnon observed conduct on my client's part that arose to the level of resisting arrest, that would be an independent basis to arrest her for fine, probable cause. That's not in the record. In my use of the term flailing, just put that aside. It's not in the record. And, you know, there's not even any evidence that she flailed. I mean, or at least no undisputed evidence that she flailed. He grabbed her out of his car and threw her against it, you know, breaking her ribs. She wasn't flailing. Okay. Well, our question is what is reasonable for a police officer, objectively reasonable for a police officer to believe and understand, okay? Accepting your version of the facts, your position is, and it was the district court's position, that it's not objectively reasonable to believe that if you see a police officer who has somebody restrained up against a car or a wall or someplace else, it's not objectively reasonable to understand in those circumstances this person has somehow been resisting and that's why they're being restrained. Right. It's not. Okay. It's not. And, in fact, it didn't occur here. And that's what your position has to be, right? Because if it weren't, it would be objectively reasonable to say, hey, wait a second, I've got to help, right? And there was probable cause. But probable cause for resisting arrest. There's no charge of resisting arrest here. She was never charged with resisting arrest. She was charged with obstruction. I mean, it's a different offense. It's a disorderly person's offense. She was interfering with his investigation of this animal cruelty by getting in her vehicle. Aren't you off point then? Because the question is not what she's ultimately charged with, but what the officer understands reasonably at the time he assists in the effecting of the arrest, right? He has never said, Your Honor, that I believed she was resisting arrest. In fact, there is direct testimony from him and his deposition that says she was not resisting when he saw her. And he doesn't say, I thought she had been resisting. I thought that what the district court was speaking to was, in fact, the assertion that there was some belief, that there was some problem with whether she was resisting or not. Because the district court says Gagnon came on the scene, this is page 7, and saw Sardello. Am I saying your client's name right? Sardello. Sardello, I apologize. And saw Sardello pushed up against her car with her arms held behind her back by sex. At this point, Sardello was restrained, and the events allegedly giving rise to probable cause for her arrest had transpired. In other words, the district court seems to have understood that the alleged probable cause did, in fact, have to do with struggling and fighting against sex. That's how I read that. Well, Judge, perhaps that rather ambiguous language could lend that impression to you. But as the facts lie, I don't believe the district court concluded that at all. There's nothing in the record. No, she got in the car. She got in the car. And he pulled her out. Right, and he pulled her out. She was leaving the scene, you know. Maybe she wasn't leaving the scene. She got in the car to protect herself from him. You know, it just, it's not good law, and it's not Rogers to say that another officer saying she's under arrest is enough. It's just not enough. You know, it just doesn't make, it's not good law. We don't want the police acting that way. And if there were only she's under arrest going on, that would be a different case than a case where you have a call to go and assist in some problem, and you see somebody physically restrained, and you have the statement she's under arrest. I mean, when you say Rogers says it's not enough to hear from someone, aren't you leaving out important, undisputed facts that are in this mix? Rogers may not say it's enough just to hear somebody say something, but we're not talking about just hearing somebody say something on these undisputed facts, are we? I think we are, because I don't think there's anything about the observations of the conduct at the scene that add anything to what on here. You disagree with the import of it, but you don't deny that they happened, they occurred. He saw what he said he saw. I mean, that piece is undisputed. He saw your client, Ms. Schardello, pressed up against her car in an arm lock. Yes, and I'm saying that is not enough. Absolutely that is not enough. And, you know, I point to the simple thing that a police officer can do. That's what happened in the Lange case, which we both cited. You get there, you see the situation, you say, what happened? The officer tells you what happened and says, I saw it, and, you know, these are criminal acts or disorderly persons' acts. It's easy. If you have no other questions, I have nothing further. Thank you. Thank you. Thank you, Your Honors. What has now been acknowledged is that there was, at some point, Officer Gagnon was told that there was obstruction, and counsel's correct. He did fill out obstruction because he had been told by Officer Sexton that there was obstruction. He filled that out at the police station. It's also undisputed. These are the facts that the only facts that would have been told to Officer Gagnon had he asked what happened. It's undisputed that there was an investigation ongoing. It's undisputed that Officer Sexton flashed his badge. It's undisputed that Schardello tried to close the door and drive away. But that doesn't matter when we are looking at what Gagnon reasonably believed and perceived. Well, I think the point is. Because he didn't see any of those things, or know of them. He didn't see any of those things. He did understand there was obstruction at some point afterwards. At some point. That's undisputed. When you look at Rogers, which you rely on in this case, we are looking at a point in time. And at that point in time, was there enough? And, again, based upon those things that I've mentioned, I do believe that there was enough altogether to suggest to Officer Gagnon that there had been an appropriate arrest made. And, again, I can't stress enough that if we look at this, pulling ourselves back and examining it is not the same as being on the scene at the time. And I think we always have to keep that in mind. Should an officer be subject to civil liability, if he has reason to believe that there's actually been an arrest made, and he relies upon the conduct, the things that are happening around him, based upon his knowledge and his experience, is that so substantial as to require the claim against him to go forward? I think it's really quite insubstantial under all circumstances. I completely understand the claim against Sexton. There's no question that there's a claim against Sexton. Officer Gagnon arrived at the scene and was trying to do police work. And maybe he didn't ask every question he should have, but I think that the idea of qualified immunity is to prevent insubstantial claims from moving forward. There would be no case if he said two words, one question, what happened? And, again, I don't believe that the law requires there to be this type of super-investigation under the circumstances. Thank you, Your Honors. Thank you. We'll take the case under advisement. Thank you. Thank you.